| | | |
|---|---|---|
| **RICKY WALKER (#2007-0066070),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09 C 1752** |
| **v.** | ) | |
| | ) | **Hon. James F. Holderman** |
| **TOM DART, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a pretrial detainee in the custody of the Cook County Department of Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, jail officials, have violated the plaintiff's constitutional rights by subjecting him to inhumane conditions of confinement and by interfering with the exercise of his religious beliefs. More specifically, the plaintiff alleges that the air vents are dust-contaminated, that the facility is infested with pests, and that Muslim religious services were suspended for nine months. [Previously, by Memorandum Opinion and Order of February 19, 2010, the court dismissed all other claims pursuant to Fed. R. Civ. P. 12(b)(6).] This matter is before the court for ruling on the defendants' motion for summary judgment. For the reasons stated in this order, the motion is granted.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the

evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).


**<u>FACTS</u>**

The defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, the defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [document no. 41], as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The notice specifically provides:

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

(3) a concise response to the movant's statement that shall contain

(A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

(B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1." *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite these admonitions, the plaintiff's response to the defendants' statement of uncontested facts merely argues or clarifies certain points; the plaintiff does not cite any authority for any of the factual propositions he makes. The defendants object, with good reason, to the plaintiff's response to their Local Rule 56.1 Statement of Facts.

Because the plaintiff is proceeding *pro se*, the court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials. However, the court

will entertain the plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. In addition, a layperson may not testify about matters involving medical, technical, or other specialized knowledge. *See* Fed. R. Evid. 701, 702.

Consequently, the following facts, gathered from the defendants' essentially uncontroverted Statement of Facts and other supporting evidence, are deemed undisputed for purposes of this motion [the court has also inserted additional facts based upon the plaintiff's deposition testimony]:

The plaintiff is a pretrial detainee at the Cook County Jail. (Complaint, p. 2.) The plaintiff has been in the custody of the Cook County Department of Corrections (hereinafter, "the jail") from September 2007 to the present. (Defendants' Exhibit 1, Deposition of Ricky Walker, at p. 9.) The plaintiff has been housed in the facility's Division One, a maximum security division, throughout his incarceration. (*Ibid.*)

The jail's maintenance staff does not routinely clean Division One's vent system. (Plaintiff's Dep., p. 10.) The plaintiff is able to wipe the dust only from the face of the vent that carries air to his cell. (*Id.*, p. 11.) At night, the plaintiff can see dust particles blowing from the vents. (*Id.*, pp. 10-11.) One can also hear inmates hacking and coughing throughout the night. (*Ibid.*)

The plaintiff coughs and "carries on" all night long. (*Id.*, p. 12.) On occasion, the plaintiff has awakened spitting up blood. (*Ibid.*) The plaintiff has sought medical attention for his cough, but cannot be sure that the dust in the air has caused his breathing problems. (*Id.*, pp. 12-13.) The

plaintiff does not have asthma and has never passed out because he could not breathe. (*Id.*, p. 13.) The plaintiff has no medical reports diagnosing him with respiratory problems. (*Id.*, p. 14.)

Cockroaches, mice, and rats inhabit the plaintiff's housing unit. (Plaintiff's Dep., pp. 14-15.). These pests run around and do "what mice and roaches do." (*Id.*, p. 15.) The plaintiff has never been bitten by any of the pests. (*Ibid.*) The plaintiff has never become sick on account of the pests. (*Ibid.*) However, the plaintiff has lost his appetite at the sight of vermin and lost money due to commissary purchases that he felt were contaminated. (*Ibid.*; Plaintiff's Response to Defendants' Statement of Facts, p. 14.)

The plaintiff converted to Islam in 1999. (Plaintiff's Dep., p. 16.) The plaintiff purchased a Quran, the holy book of the Muslim faith, and is able to read it daily. (*Id.*, p. 17.) The plaintiff's Quran has never been taken from him. (*Ibid.*) There are certain times of day, based on the position of the moon, that are times of prayer for followers of the Muslim faith. (*Id.*, p. 18; Plaintiff's Resp. to Statement of Facts, p. 14.) The plaintiff is able to stop what he is doing and pray at these times. (Plaintiff's Dep., p. 18; Plaintiff's Resp. to Statement of Facts, p. 14.)

Muslim leaders from the outside community perform religious services at the jail. (Defendants' Exhibit 3, Affidavit of Superintendent Michael Miller, ¶ 6.) Muslim leaders are supposed to visit jail detainees once a week. (Plaintiff's Dep., p. 19.) Representatives of the Muslim faith who go to the jail are volunteers and are not employed by Cook County or the jail. (*Id.*, pp. 19, 26; Miller Affidavit, ¶ 6.) The plaintiff has never asked family members or other visitors to contact a representative from the Nation of Islam to visit him. (Plaintiff's Dep., p. 21.) The plaintiff explains that he comes from a Christian family and that they frown on the Muslim faith. (Plaintiff's Resp. to Defts' Stmnt of Facts, p. 14.)

Whenever the plaintiff is unable to attend Islamic services, he is still able to practice other aspects of his faith, albeit without the guidance of an imam. (Plaintiff's Dep., pp. 25-26.) The plaintiff is able to reflect on scriptures, but only according to his own, non-expert understanding of the holy words. (*Id.*, p. 21.)

On April 1, 2009, the plaintiff filed a grievance concerning the suspension of religious services during a lockdown. (Plaintiff's Dep., p. 23; Defendants' Exhibit 1 to Deposition, Detainee Grievance; Defendants' Exhibit 2, Affidavit of Program Services Administrator John Mueller, ¶ 4.) The plaintiff's social worker (or Correctional Rehabilitation Worker, hereinafter, "CRW") responded on or about May 13, 2009. (*Id.*, ¶ 5.) The CRW informed the plaintiff that a lockdown at the jail temporarily prevented inmate movement and, thus, group religious services. (*Ibid.*)

On April 27, 2009, the plaintiff filed a second grievance regarding the denial of religious services. (*Id.*, ¶ 6; Defendants' Exhibit 2 to Plaintiff's Deposition, Detainee Grievance.) On May 19, 2009, the CRW informed the plaintiff that the chaplain had been out for a few months due to surgery, and that religious services were suspended in the interim because "the chaplains are all volunteers." (Miller Affidavit, ¶ 6; Grievance 2, p. 2.)

The plaintiff was familiar with jail grievance procedures. (Plaintiff's Dep., p. 25.). The plaintiff did not appeal either grievance. (*Ibid.*; *see also* Exhibit 2, ¶ 7.) The plaintiff clarifies in his opposing brief that he was willing to accept the administration's response at the time, but that the lack of a religious leader persisted for many more months. (Plaintiff's Resp., p. 15.) The plaintiff believed (but has submitted no evidence) that volunteer chaplains were being refused entrance to the jail. (Plaintiff's Dep., pp. 26-27.)

The plaintiff estimates that there were no Muslim religious services for a period of about nine months. (*Id.*, p. 26.) The defendants report that between January 13, 2009, and September 1, 2009, the only times a Muslim service would be cancelled was when there was a divisional lockdown, a staff shortage, or the Muslim volunteer did not appear. (Miller Affid., ¶ 2.)

A divisional lockdown is a security measure in which all unnecessary movement within a particular housing unit is suspended while correctional officials conduct a thorough search of the entire facility, area-by-area. (Id., ¶ 3.) A principal focus of the lockdowns is to locate and identify any possible security breaches, as well as to unearth contraband such as weapons and illegal drugs. (*Ibid.*) For operational reasons, such activities as linen exchanges, recreation, religious services, and other functions involving inmate movement are cancelled during lockdowns and rescheduled later. (*Ibid.*) All religious services are suspended during lockdowns, not just Muslim services. (Plaintiff's Dep., p. 20.) The plaintiff is still able to receive visitors during lockdowns. (*Ibid.*)

Correctional officials attempt to provide jail detainees with the ability to practice their religion "as freely as possible consistent with the operational requirements and safety concerns of the correctional institution." (Miller Affidavit, ¶ 8.)

## ANALYSIS

There is no genuine dispute as to any material fact, and the defendants have established that they are entitled to judgment as a matter of law on each of the plaintiff's remaining claims. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that the defendants have violated the plaintiff's constitutional rights.

### I. The Plaintiff's Conditions of Confinement Claims

The plaintiff has failed to establish a triable Fourteenth Amendment claim arising from either dusty vents at the jail or the presence of rodents and insects in his housing unit. The Due Process Clause prohibits any kind of punishment of a pretrial detainee. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Minix v. Canarecci*, 597 F.3d 824, 830-31 (7th Cir. 2010). The protections extended to pretrial detainees under the Due Process Clause are at least as extensive as the protections against cruel and unusual punishment afforded to prisoners by the Eighth Amendment. *See, e.g., Velez v. Johnson*, 395 F.3d 732, 735 (7th Cir. 2005). The Eighth Amendment requires that inmates be furnished with basic human needs. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Christopher v. Buss*, 384 F.3d 879, 881-82 (7th Cir. 2004). Prison officials violate an inmate's constitutional rights in conditions of confinement cases where the alleged deprivation is "sufficiently serious" (the objective standard) and (2) the officials act with deliberate indifference (the subjective standard). *Farmer v. Brennan*, 511 U.S. 825 (1994); *Lehn v. Holmes*, 364 F.3d 862, 872 (7th Cir. 2004).

### A. Dust in the Air Vents

#### 1. Objective Prong

The plaintiff has failed to provide sufficient evidence to go to a jury that dust in the air has caused serious health problems. The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004), *quoting Farmer, supra*, 511 U.S. at 834 (internal quotations omitted). The U.S. Court of Appeals for the Seventh Circuit has made clear that the "mere fact that pretrial detention interferes with a person's desire to live comfortably and free from restraint does not

without more make the conditions of that confinement unconstitutional." *Black v. Cline*, No. 08 C 5989, 2009 WL 2192806, *2 (N.D. Ill. Jul. 23, 2009) (Andersen, J.), *quoting Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005).

Substandard living conditions do not necessarily equal unconstitutional conditions. *Compare Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (objective component met where prison conditions were "strikingly reminiscent of the Black Hole of Calcutta"). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997), *citing Farmer, supra*, 511 U.S. at 833-34. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The plaintiff has failed to demonstrate that dust in the jails ventilation system has amounted to a problem of constitutional dimension. Inadequate ventilation may give rise to a cause of action under 42 U.S.C. § 1983. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); *see also Board v. Farnham*, 394 F.3d 469, 485-86 (7th Cir. 2005). However, "conclusory allegations, without backing from medical or scientific sources, that the rank air exposed [the plaintiff] to diseases and caused respiratory problems which he would not otherwise have suffered" are insufficient to survive summary judgment. *Id.* at 645; *see also Vasquez v. Frank*, 290 Fed. Appx. 927, 929 (7th Cir. 2008). A motion for summary judgment "requires the responding party to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad* 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). In its Memorandum Opinion and Order of

February 19, 2010, the court (Andersen, J.) expressly advised the plaintiff he would have to substantiate his claim with medical or scientific evidence. (Order at p. 8.) The plaintiff has failed to do so.

Although the court is troubled by the plaintiff's declaration that he coughs at night and sometimes even spits up blood, he has provided no medical records showing that he has been treated for breathing-related problems, no maintenance or environmental records suggesting that the jail's air has unsafe levels of contaminants, nor any evidence tending to show a link between his coughing and the facility's ventilation system. To the contrary, the plaintiff admitted at his deposition that he is not asthmatic and had no history of respiratory issues prior to his confinement. Nothing in the record signals that the plaintiff is particularly susceptible to dust in the air. The plaintiff, in short, has provided no direct evidence concerning dust in the air; the only circumstantial evidence is that he claims to have had no respiratory problems prior to his incarceration.

The plaintiff's subjective belief that dust particles in the circulation vents have caused such extreme problems is not enough to proceed to trial. "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008). Opinions or inferences based on medical, scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702 are not admissible as lay testimony. *See United States v. York*, 572 F.3d 415, 420 (7th Cir. 2009).

The plaintiff urges the court to order the defendants to produce jail inspection reports from 2007 through 2009. (Plaintiff's Response to Summary Judgment at p. 3.) However, the plaintiff should have requested any such records during the discovery phase of this litigation. The possibility that evidence may exist to support the plaintiff's claims is an insufficient basis for denying summary judgment. In the absence of any proof that the air is unsafe, or that poor ventilation is responsible for the plaintiff's breathing problems, he cannot satisfy the objective prong.

## 2. Subjective Prong

Irrespective of whether dust in the air poses an objectively significant risk to the plaintiff's health, he has failed to show that the defendants have acted with deliberate indifference. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson, supra*, 955 F.2d at 22. The subjective component requires a prison official have a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298; *Hayes v. Snyder*, 546 F.3d 516, 521 (7th Cir. 2008). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. at 837; *Wilson*, 501 U.S. at 303; *Lee v. Young*, 533 F.3d 505, 509-10 (7th Cir. 2008). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm.

Neither negligence nor gross negligence implicates the Constitution. *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002) (citations omitted); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.' " *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006), *quoting Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998). "Proving deliberate indifference "requires more than a showing of negligent or even grossly negligent behavior. . . . [T]he corrections officer must have acted with the equivalent of criminal recklessness." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008), *quoting Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). "Deliberate indifference" is a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm upon a prisoner." *Wilson v. Seiter*, 501 U.S. 294 (1991); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "It is not enough that a reasonable prison official would or should have known that the prisoner was at risk; the official must actually know of and disregard the risk to incur culpability." *Lewis v. Richards*, 107 F.3d 549, 552-53 (7th Cir. 1997) (*citing Farmer*, 511 U.S. at 837-38).

Even if the defendants should have seen to it that the ventilation ducts are cleaned regularly, their omission does not rise to the level of a Fourteenth Amendment violation. "[F]ailing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not [a constitutional violation]." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Dust in air vents is not so inherently dangerous as to amount to an objectively serious risk of harm for purposes of Fourteenth Amendment analysis. Under the circumstances of this case, knowledge and disregard of a serious risk to the plaintiff cannot be attributed to the defendants. The defendants are entitled to judgment as a matter of law on the plaintiff's claim of poor ventilation.

### B. Pests in the Plaintiff's Housing Division

The presence of vermin in the plaintiff's housing unit is entirely unacceptable; however, the plaintiff cannot recover damages because he has not shown physical injury. In its order denying the defendants' motion to dismiss, the court specifically cautioned: "[O]n a motion for summary judgment, Plaintiff will need to demonstrate that the exposure to pests resulted in physical harm." (Memorandum Opinion of February 19, 2010, at p. 8, *citing Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). Although invited to do so, the plaintiff has not produced any such evidence. To prevail on a Section 1983 regarding pest infestation, a plaintiff must show a persistent problem plus "significant physical harm." *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

At his deposition, the plaintiff conceded that he has never been bitten by any of the mice, rats, or cockroaches and that he has never become sick on account of the pests. (Plaintiff's Dep., p. 15.) The plaintiff's injuries have been entirely economic or emotional: he lost his appetite when he saw mice running around, or did not want to eat where he knew roaches had been. (*Ibid.*; *see also* Plaintiff's Response to Defendants' Statement of Facts, p. 14.) The plaintiff reasons that such pests carry disease. (Opposing Brief, pp. 4-5.) But because the plaintiff has never actually contracted any disease or suffered any ill effects on account of the pest infestation, he cannot recover damages under 42 U.S.C. § 1983.

Federal law provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Zehner v. Trigg*, 133 F.3d 459, 462-63 (7th Cir. 1997) (upholding the PLRA's limitation on damages in the absence of a showing of physical injury); *Calhoun v.*

*DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("We believe that . . . § 1997e(e) forecloses an action for nominal or punitive damages for an Eighth Amendment violation involving no physical injury"). The plaintiff is not entitled to damages for harm that might have occurred but did not. *See, e.g., Boatman v. Dart*, No. 08 C 3630, 2009 WL 1137753, *5 (N.D. Ill. Apr. 20, 2009) (Norgle, J.).

In sum, under the facts of this case, while the county "deserves no praise" for allowing pests to be such a problem, *see Sain*, 512 F.3d at 894, the plaintiff cannot recover damages without showing physical injury. Accordingly, the defendants are entitled to judgment as a matter of law on the plaintiff's pest infestation claim as well.

## II.  Lack of Religious Services for Nine Months

The plaintiff failed to exhaust administrative remedies in connection with his religious exercise claim; in any event, the suspension of religious services for valid penological reasons did not violate his First Amendment rights.

### A.  Exhaustion of Administrative Remedies

The court cannot entertain the plaintiff's religious exercise claim because he failed to completely exhaust administrative remedies prior to bringing suit. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner,* 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under

Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

In the case at bar, the plaintiff filed two grievances concerning the cancellation of religious services but failed to finalize the administrative review process with respect to either grievance. The plaintiff does not dispute that he failed to appeal either grievance concerning the cancellation of religious services. In order to exhaust, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001). An inmate must comply with the rules established by the State with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court).

Inmates at the Cook County Jail receive a handbook describing basic programs and procedures. *See* John Howard Association's Court Monitoring Report, filed on May 12, 2000, in *Duran v. Sheahan*, 74 C 2949 (N.D. Ill.) (reflecting that the Cook County Jail has an established and publicized grievance procedure). The plaintiff also acknowledged at his deposition that he was familiar with the appeal process. (Plaintiff's Dep. p. 25.) Because the plaintiff did not fully exhaust the administrative grievance process, the court lacks discretion to resolve his claim on the merits. *Perez v. Wis. Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999).

The plaintiff now maintains that he was unaware of how to appeal; however, he may not, in response to a motion for summary judgment, contradict his deposition testimony with inconsistent new testimony. "[L]itigants cannot create sham issues of fact with affidavits that contradict their prior depositions." *Janky v. Lake County Convention and Visitors Bureau*, 576

F.3d 356, 362 (7th Cir. 2009), *quoting Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007). "If such contradictions were permitted . . .'the very purpose of the summary judgment motion – to weed out unfounded claims, specious denials, and sham defenses – would be severely undercut.' " *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005), *quoting Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996). The plaintiff failed to take advantage of grievance procedures he knew were available.

### B. No First Amendment Violation

Even assuming that the plaintiff properly considered his grievances resolved at the time and that no appeal was warranted, he has no viable substantive claim. It is beyond dispute that Islam is a bona fide religion; the court will further accept as true that: (1) the plaintiff's religious beliefs are sincerely held, (2) imam-led, group services are essential to the practice of his religion, and (3) services were cancelled for an entire nine-month period (as the plaintiff maintains) rather than for discreet periods of time (as the defendants seem to indicate). Nevertheless, under the circumstances of this case, the court finds that the cancellation of religious services did not violate the plaintiff's constitutional rights.

Correctional administrators must permit inmates a reasonable opportunity to exercise their religious beliefs. *See, e.g., Tarpley v. Allen County, Indiana*, 312 F.3d 895, 898 (7th Cir. 2002), *citing Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). Although inmates do not forfeit all First Amendment protections by virtue of their conviction, incarceration necessitates some withdrawal or limitation of many rights and privileges. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Johnson v.*

*California*, 543 U.S. 499, 510 (2005), *quoting Pell v. Procunier*, 417 U.S. 817, 822 (1974). When a challenged prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is "reasonably related" to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Russell v. Richards*, 384 F.3d 444, 447 (7th Cir. 2004).

Based on the four factors set forth in *Turner*, 482 U.S. at 89-90, the court finds that the defendants are entitled to judgment as a matter of law on this issue. First, there is a valid and rational connection between the challenged policy and a legitimate government interest behind the rule: religious services at the Cook County Jail are cancelled only when there are divisional lockdowns, staff shortages, or the Muslim volunteer does not appear to conduct services. "The law is clear that there is no absolute right to being able to attend group religious services; legitimate penological interests can take precedence over such a right." *Buck v. Lake County Sheriff*, No. 03 C 1740, 2004 WL 2983966, *8 (N.D. Ill. Dec. 3, 2004) (Gottschall, J.); *accord, Sloan v. Lesza*, No. 95 C 0445, 1997 WL 289870, *4 (N.D. Ill. May 19, 1997) (Shadur, J.); *Waldron v. Lesza*, No. 89 C 5101, 1992 WL 51676, at *3 (N.D. Ill. Mar. 10, 1992) (Hart, J.) (denial of group religious services for pretrial detainee in capital case did not violate his constitutional rights); *Hadi v. Horn*, 830 F.2d 779 (7th Cir. 1987) (prison administrators cancelled Muslim services when Muslim chaplain was unavailable to lead them; administrators could forbid inmates from leading the services).

Second, the plaintiff had alternative means of exercising his rights: he was free at the very least to pray alone in his cell throughout the day, to study his Quran, and to reflect on scriptures. The only aspect of his religion that was temporarily curtailed was group religious services led by a Muslim leader. *See, e.g., Grant v. DeTella*, No. 96 C 2727, 1999 WL 966988, at *4 (N.D. Ill.

Oct. 06, 1999) (Pallmeyer, J.) (where inmate was confined to his cell for his own protection, prayer in his cell rather than through communal worship was constitutionally acceptable).

Third, accommodating the plaintiff's desire to participate in group religious services would have had a significant adverse impact on jail administration: As noted *supra*, legitimate security concerns triggered each suspension of group religious services. Lockdowns, by definition, involve restrictions on group movement and group congregation; the jail could not simply hire a new chaplain when its employee was out on extended leave; and allowing high security inmates to participate in group services when there were staff shortages would have seriously strained jail resources, as monitoring would have been required. Furthermore, affording religious opportunities to Muslim inmates that detainees of other denominations were not receiving would have given rise to resentment, and possible litigation, from the other inmates.

Fourth, there was no practical alternative to group religious services. Especially because the jail's staff chaplain was on leave, the jail was forced to rely on Muslim volunteers from the community to fill the breach. The jail had no obligation to drum up volunteers.

This case is factually very similar to the scenario presented in *McRoy v. Cook County Dept. of Corrections*, 366 F. Supp. 2d 662 (N.D. Ill. 2005), *aff'd* 205 Fed. Appx. 462 (7th Cir. 2006), *cert. denied*, 552 U.S. 1027 (2007). In that case, Judge Castillo of this district found at summary judgment that a shortage of volunteer imams, divisional lockdowns, and staff shortages all justified the cancellation of Muslim services, and that the plaintiff's basic religious needs were met by being allowed to pray in his cell with his Quran. *McRoy*, 366 F. Supp. 2d at 668-670. The plaintiff points out that *McRoy* involved shorter and more intermittent suspensions of religious services than the nine-month-long cancellation ostensibly presented in this case. But the fact remains that

nothing in the record suggests that the defendants' asserted security reasons were pretextual or that the security measures were applied in a discriminatory manner, affecting only Muslim inmates.

The plaintiff asserts in his opposing brief that religious services were cancelled even when Division One was **not** on lockdown, when the division was **not** understaffed, and when religious volunteers **did** report to the jail. However, unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., Johnson v. McCann*, No. 08 C 4684, 2010 WL 2104640, *1 (N.D. Ill. May 21, 2010) (Norgle, J.). The plaintiff is not competent to testify to these points and provides no proof whatsoever to support his contentions: no specific dates of cancelled services, no jail records corroborating his assertions, no names of volunteers who can testify that they were turned away at the gate. To the contrary, at his deposition, the plaintiff was unable to say with any authority that Muslim volunteers were being refused admission. *See* Dep. at p. 26: "But I can't, you know, say, quote end quote, he said they wouldn't allow me in." The plaintiff is left merely with conjecture: "Why else would the people not be able to get in here? . . . Somebody's stopping them." *Ibid.*

The plaintiff propounds that "Gate records should show that religious volunteers did attempt to come to Div. #1 during the time period in question." (Plaintiff's Resp. to Defts' Statement of Facts, pp. 15-16; *see also* Opposing Brief at p. 7 ("Division #1 was only on lockdown for thirty-something days, which the Defendants' daily logs should show. Also during that period of time Division #1 was not short staffed, which also the Defendants should have records of attendance.") Again, however, it was the plaintiff's obligation to marshal any such evidence during the discovery process.

At this stage of the proceedings, the plaintiff had to come forward with evidence to show that there is a triable issue for the jury to decide. *See* Fed. R. Civ. P. 56(c); *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 627-28 (7th Cir. 2006). As the non-moving party, the plaintiff could no longer rest on the allegations contained in his pleadings but was required to come forward with specific evidence to establish a genuine issue for trial. *See Keri*, 458 F.3d at 628. The plaintiff has not met his burden of production.

In sum, irrespective of exhaustion concerns, the defendants have articulated valid reasons for the cancellation of Muslim services. It is most regrettable that a confluence of events led to the suspension of group religious services for up to an entire nine months. Nevertheless, religious services simply were not feasible during the time period in question. Moreover, the events that caused those cancellations were largely matters outside the control of jail administrators. In light of the deferential standard accorded to the informed discretion of correctional officials, the court finds that the defendants are entitled to judgment as a matter of law on the plaintiff's religious exercise claim. The defendants did not abridge the plaintiff's First Amendment rights.

For the foregoing reasons, the court finds that there is no triable dispute as to any material fact, and that the defendants are entitled to judgment as a matter of law on all three of the plaintiff's remaining claims. The defendants' motion for summary judgment is granted.

If the plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of*

*Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

## CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment [#38] is granted. The clerk is directed to enter judgment in favor of the defendants on all remaining claims pursuant to Fed. R. Civ. P. 56. The case is terminated.

Enter: _James F. Holderman_____

JAMES F. HOLDERMAN
Chief United States District Judge

Date: August 19, 2010